UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ISSA ABDIRAHAM MOHAMED,

    Petitioner,

v.                                      Case No. 2:15-CV-204
                                              HON. R. ALLAN EDGAR

REBECCA ADDUCCI, et al.,

    Respondent.
_____/

## OPINION & ORDER

On March 18, 2015, Petitioner filed a habeas petition requesting that he be released from custody immediately due to being unlawfully detained by Immigration and Customs Enforcement (ICE). *See Mohamed v. Adducci*, 2:15-CV-46 (ECF No. 7; PageID.40-44). This Court denied his petition without prejudice on May 1, 2015. *Id.* On December 29, 2015, Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241, 1651, which again challenged the validity of his continued detention by Immigration and Customs Enforcement (ICE). ECF No. 1. On February 10, 2016, Respondent filed a response in opposition to Petitioner's habeas application. ECF No. 5.

The Court adopts its statement of facts from its Opinion from Petitioner's first habeas petition:

> Petitioner, a citizen of Somalia, received a humanitarian parole in the United States on November 13, 1992. Petitioner became a lawful permanent resident of the United States on December 7, 1995. Petitioner was convicted in Michigan of Fourth Degree Criminal Sexual Conduct on November 6, 1999, by the Washtenaw County Circuit Court. An Immigration Judge ordered Petitioner's removal on August 16, 2000. Petitioner was released on an Order of Supervision

> with ICE.
>
> On March 3, 2014, ICE's Detroit Enforcement and Removal Operations sent a request for Petitioner's travel documents to ICE headquarters office of the Travel Document Unit for the Removal Management Division, in Washington, D.C. Petitioner's removal was authorized by Somalia to occur during the month of September. ICE took Petitioner into custody on September 12, 2014, after obtaining travel documents to Somalia for Petitioner. Somalia issued Petitioner travel documents on September 11, 2014, that were valid for travel until September 25, 2014. Petitioner was scheduled to travel to Somalia, on a commercial flight leaving the United States on September 21, 2014. However, Somalia rescinded Petitioner's travel authorization on September 17, 2014, to clarify removal procedures. ICE representatives and Somali officials met to discuss procedures for removal of nationals to Somalia. Some Somali nationals were subsequently removed during February 2015. Petitioner was supposed to be removed in February. However, on February 21, 2015, Somali officials rescinded the authorization which allowed Petitioner's removal.
>
> ICE was informed by the Department of State that the new Somali government cabinet members required briefing on removal procedures before authorization was provided for removal of Somali nationals from the United States. The new Somali government has authorized removal of several previously cancelled removals of Somali nationals for the month of April 2015. Respondent expects that the Government of Somalia will authorize travel documents for Petitioner after the April 2015 removals are completed.

*See Mohamed*, 2:15-CV-46 (ECF No. 7 at 1-2; PageID.40-41).  Since that time, ICE reviewed Petitioner's detention on the following days while his removal to Somalia was pending: June 20, 2015; September 24, 2015; and December 21, 2015.  ECF No. 5 at 3; PageID.17 (citing Ex. 1, ECF No. 6 at 2-4, PageID.28-30).  After each review, ICE affirmed its decision to continue to detain Petitioner.  *Id.*

On December 30, 2015, the Embassy of the Federal Republic of Somalia in Kenya issued temporary travel documents to Petitioner (expiring on January 13, 2016) that allowed him

to travel to Somalia.  ECF No. 5 at 3; PageID.17 (citing Ex. 2, ECF No. 6-1 at 2-4; PageID.32-34).  Petitioner was then scheduled to depart for Somalia on January 3, 2016.  ECF No. 5 at 3; PageID.17.  His departure itinerary began with him leaving from Detroit Metropolitan Airport on January 3, 2016, arriving at Washington Dulles International Airport, then flying to Ethiopia, and finally arriving in Kenya.  *Id.*  (citing Ex. 3, ECF No. 2-3, PageID.36-37).  Once in Kenya, ICE Officers were going to escort Petitioner to Somalia along with two other aliens being removed from the United States.  *Id.*  (citing Ex. 4, ECF No. 6-3 at 4, PageID.41).

Petitioner's removal began according to plan on January 2, 2016, when ICE transported him from Chippewa County Jail to Dearborn, Michigan.  ECF No. 5 at 3-4; PageID.17-18 (citing Ex. 2, ECF No. 6-1 at 2-4, PageID.32-34).  On January 3, 2016, three ICE Officers met with Petitioner in Dearborn, Michigan for the purpose of escorting him to the Detroit Metropolitan Airport to catch his commercial flight.  ECF No. 5 at 4; PageID.18 (citing Ex 5 at par 5).  Before, during, and after being brought to the Detroit Airport, Petitioner informed the ICE Officers that he refused to return to Somalia.  *Id.* (citing Ex 5,  ECF No. 3, PageID.45).  As a result of Petitioner's repeated refusal and noncompliance, ICE Officers placed Petitioner in restraints and obtained assistance from the Detroit Airport Police.  *Id.*  Petitioner was escorted to the ticket counter and Transportation Security Administration (TSA) checkpoint.  *Id.*  At the TSA checkpoint, Petitioner refused to pass through security as he again refused to be removed.  *Id.*  Due to his verbal noncompliance and subsequent physical altercation with the ICE Officers and Detroit Airport Police, Petitioner missed his flight. ECF No. 5 at 4-5; PageID.18-19 (citing Ex. 5, ECF No. 3-4, PageID.45-46); *see also* citing Ex. 4, ECF No. 6-3 at 4, PageID.41 ("Petitioner verbally and physical[ly] resisted Wayne County Airport police while at the Transportation

Security Administration (TSA) checkpoint. He also refused to enter the concourse and board the plane."). Petitioner was then transported back to the Chippewa County Jail. ECF No. 5 at 4-5; PageID.18-19.

Because ICE removes Somalians by charter or commercial flights, there are a limited number of spots available. ECF No. 5 at 5; PageID.19 (citing Ex. 6, ECF No. 6-5 at 3, PageID.49) (noting that the ICE headquarters receives removal requests from twenty-four different field offices). When an alien does not comply with the removal process, his or her name is moved to the bottom of the removal roster. *Id.* (citing Ex. 6, ECF No. 6-5 at 3, PageID.49). There are no more slots available for Somalians to be removed from the United States on any charter or commercial flights from now until May 2016. *Id.* (citing Ex. 6, ECF No. 6-5 at 3, PageID.49). As a result, the soonest Petitioner may be removed is sometime after May of 2016.

Petitioner argues that his continued detention violates his Due Process rights, as he has been detained for almost a year and a half while waiting to be removed. Respondent contends that the only reason he is still being detained is because of his own actions (as he would currently be in Somalia had he complied with his most recent removal travel arrangements).

An alien's detention pending removal from the United States is governed by Section 241(a) of the Immigration and Nationality Act (INA). 8 U.S.C. § 1231(a). The law states that when an alien is ordered removed, "the Attorney General shall remove the alien from the United States within a period of ninety days." 8 U.S.C. § 1231(a)(1)(A). During that time, the alien must be detained. 8 U.S.C. § 1231(a)(2). If an alien is not removed within that time frame, the alien will be "subject to supervision under regulations prescribed by the Attorney General." 8

U.S.C. § 1231(a)(3).

Under certain circumstances, the Attorney General (AG) may detain the alien beyond the ninety day removal period if the alien has not yet been removed. For example, if the alien has not been removed and the AG believes that he is "a risk to the community or unlikely to comply with the order of removal[]," the AG may detain the alien beyond ninety days. 8 U.S.C. § 1231(a)(6). Similarly, the ninety day removal period will be extended "if the alien fails or refuses to make timely [an] application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C); *see, e.g., Sarwar v. Mukasey*, No. 4:08-CV-242-RH/WCS, 2009 WL 395214, at *3 (N.D. Fla. Feb. 14, 2009) (noting that because the alien "hindered his own removal," extending his detention beyond six months was permissible); *see also Powell v. Ashcroft*, 194 F. Supp. 2d 209, 211 (E.D.N.Y. 2002) (noting that continued detention was permissible since the alien did not "provide accurate and complete information to the INS," and that he would likely readily be removed after doing so); *Sango-Dema v. District Director, I.N.S.*, 122 F. Supp. 2d 213, 221 (D. Mass. 2000) (noting the case was decided before *Zadvyas*, but it still stated that "[e]ven if this Court were to agree with the courts recognizing a constitutional right to be free from indefinite detention by the INS, an alien cannot trigger such a right with his outright refusal to cooperate with INS officials.").

While an alien may be detained beyond the ninety days if one of these statutory reasons applies, the alien may not be detained indefinitely. Once the ninety day removal has expired and the alien has not been removed, the government is permitted to continue detention of the alien for a period of six months as long as removal is likely to occur within the "reasonably

foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *see also Ly v. Hansen*, 351 F.3d 263, 275-766 (6th Cir. 2003) ("The Supreme Court set a presumptive standard of 90 days and an outside limit of six months detention for aliens who have been ordered removed absent a showing of a 'strong special justification' for detention.") (citation omitted).  Notably, however, this does not mean that the government should release every alien that has not been removed within those six months; rather, it means "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701 (stating the longer someone is detained after the ninety days, "what counts as the 'reasonably foreseeable future' conversely would have to shrink."). Ultimately, the burden is on the alien to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and if shown, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Id.* at 701; *see also Clark v. Martinez*, 543 U.S. 371, 377-78 (2005) (noting that after six months, "the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'") (citation omitted).

Here, there is no doubt that Petitioner has been detained for over six months after ICE detained him on September 12, 2014.  However, Petitioner has not demonstrated that his removal is not within the "reasonably foreseeable future."  For example, and most importantly, Petitioner had arrangements to be removed on January 3, 2016, but he chose to not comply with those arrangements. ECF No. 6-1 at 2-4; PageID.32-34; ECF No. 6-3 at 4-5; PageID.41-42; ECF No. 6-4 at 2-4; PageID.44-46.  As a result, Petitioner's name has been moved to the "end of the removal roster," which means his detention period has been extended at the mercy of the removal

roster.  ECF No. 6-5 at 3; PageID.49 (noting there are no seats currently available for removal to Somalia until potentially May 2016).  Because Petitioner "hindered his own removal," his continued detention is not unconstitutional. *See, e.g., Sarwar*, 2009 WL 395214, at *3.

Moreover, Petitioner's removal is "reasonably foreseeable" since the Somali government has provided no reason to believe that it will refuse to accept Petitioner again in the future, as it has already attempted to accept him twice (in September of 2014 and January of 2016). *See Mohamed*, 2:15-CV-46 (ECF No. 4-1 at 6; PageID.31 (from September 11, 2014 to September 25, 2014)); *see also* ECF No. 6-1 at 2-4; PageID.32-34 (from December 30, 2015 to January 13, 2016); *cf. Zadvydas*, 533 U.S. at 684-686 (noting the petitioners' removal countries refused to accept them).  As such, Petitioner has not demonstrated that he faces "potentially indefinite" confinement. *See Gjoliku v. Chertoff*, No. 1:06-CV-458, 2007 WL 518809, at *10 (W.D. Mich. Feb. 14, 2007) (citing *Zadvyas*, 533 U.S. at 679, 684-86, 691).  Consequently, Petitioner's continued detention does not violate his Due Process rights at this time.

Overall, Petitioner has not demonstrated that he is being detained unconstitutionally, or that it is unreasonable for ICE to continue his detention beyond the six month period since it is reasonably likely that he will be removed in the foreseeable future. Accordingly, his petition for habeas relief is denied, and this Court **DENIES** Petitioner's application **WITHOUT PREJUDICE**.  ECF No. 1. A Judgment consistent with this Opinion and Order will be entered.

SO ORDERED.

Date:_2/29/2016____                              _____/s/ R. Allan Edgar_____
                                                 HON. R. ALLAN EDGAR
                                                 UNITED STATES DISTRICT JUDGE